UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 13-cv-81053-MIDDLEBROOKS

CHRISTOPHER F. O'HARE,

    Plaintiff,

v.

TOWN OF GULF STREAM, WILLIAM
THRASHER, individually, and DAVID
GINSBERG, individually.

    Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court is Defendant David Ginsberg's ("Ginsberg") Motion for Summary Judgment (DE 100), filed on July 13, 2015. On July 30, 2015, O'Hare filed a Response (DE 108), to which Ginsberg replied (DE 115) on August 13, 2015. On August 21, 2015, O'Hare filed a Sur Reply. (DE 125). For reasons stated below, Ginsberg's Motion for Summary Judgment is granted.

## BACKGROUND

In August 2011, O'Hare decided to perform improvements on his home, including replacing the existing roofing and landscaping. (DE 73 at ¶¶ 19, 20). On October 28, 2011, Defendant Ginsberg, a police officer for the Town of Gulf Stream, was working on road patrol. (DE 101 at ¶ 19) (citing DE 115-1, Declaration of David Ginsberg ("Ginsberg Decl.") at ¶ 4).[1] While on patrol that day, Ginsberg was in the vicinity of the Property, where he observed a lawn

---

[1] Defendants unintentionally omitted a page of the Ginsberg Declaration in their Appendix to their Statement of Undisputed Material Facts (DE 102). Ginsberg provided his complete Declaration as an Exhibit to his Reply in Support of his Motion for Summary Judgment. (DE 115-1).

service company. (*Id.* at ¶ 20). Ginsberg asserts that the lawn service company did not previously register with the Town, and so he approached the workers to inform them of their obligations. (*Id.* at ¶¶ 21-22).

Ginsberg explains that while speaking with one of the workers, he heard loud banging coming from the rear of the house. (*Id.* at ¶ 23). He further describes that because he knew of two recent burglaries of unoccupied homes and believed O'Hare's home was unoccupied, he walked around to the back of the Property to investigate the banging. (*Id.* at ¶¶ 24-25). After walking to the backyard, Ginsberg observed four men working on the house. (*Id.* at ¶ 28). At some point, Ginsberg contacted Town Hall to confirm that O'Hare did not have permits for the construction project. (*Id.* at ¶ 29).

Ginsberg contends that he then asked the workers to talk to their supervisor. (*Id.* at ¶ 30). Ginsberg stepped into an opening in "the missing wall of the structure," where he spoke with the foreman, John Gundlach ("Gundlach"). (*Id.* at ¶¶ 31); (DE 110-1, Affidavit of John Gundlach ("Gundlach Aff.")). Gundlach indicates he told Ginsberg he did not have the authority to let him in the home, and then called O'Hare, who requested that Ginsberg leave the property. (*Id.* at ¶ 33); (Gundlach Aff. at ¶¶ 5-6). Ginsberg immediately left the Property. (*Id.* at ¶ 34).

Sometime thereafter, Town Manager Thrasher, instructed the Town's Building Official, Steven Tobias, to post a stop work order at O'Hare's Property. (*Id.* at ¶ 35). Ginsberg accompanied Tobias back to the Property in order to post a stop work order. (*Id.*). After leaving the Property, Ginsberg explains that he took a photograph over the back fence of the Property, while standing in the Town's right-of-way. (DE 115-1, Ginsberg Decl. at ¶ 19). O'Hare, however, maintains that Ginsberg took these photographs by walking onto the adjacent property

2

at 2516 Avenue Au Soliel, which is also owned by O'Hare (the "Adjacent Property"). (DE 73 at ¶¶ 37-38); (DE 110-1, Affidavit of Vincent Gonzales ("Gonzales Aff.") at ¶ 5).

In Count I of the Second Amended Complaint, O'Hare alleges that Ginsberg violated his constitutional right to be free from unreasonable searches and seizures when Ginsberg "entered the curtilage and home of the O'Hare family on October 28, 2011." (DE 73 at ¶ 147). O'Hare also maintains that Ginsberg committed the common law torts of trespass (Count III) and intrusion on seclusion (Count IV) by unlawfully entering O'Hare's home and curtilage. (*Id.* at ¶¶ 158-163, 164-169).

Ginsberg now moves for summary judgment, arguing that he is entitled to qualified immunity as to O'Hare's claim for illegal search and seizure (Count I). (DE 100 at 3-4). Additionally, Ginsberg argues he is entitled to judgment as a matter of law as to O'Hare's common law claims because Florida law provides Ginsberg statutory immunity, as there is no evidence Ginsberg was acting in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property."

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1034 (Fed. Cir. 2001) (quoting Fed. R. Civ. P. 56). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The evidence of the nonmovant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *See id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## DISCUSSION

### A. Illegal Search and Seizure – Count I

Qualified immunity protects government officials performing discretionary functions from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). "If the official was acting within the scope of his discretionary authority . . . the burden

shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id.* at 1136. The Parties do not dispute that Ginsberg was acting within the scope of his discretionary authority when he entered O'Hare's home and curtilage on October 28, 2011. (DE 125 at ¶ 4). Accordingly, the burden shifts to O'Hare to demonstrate that Ginsberg is not entitled to qualified immunity. *See Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (citations omitted).

Overcoming an official's qualified immunity defense involves two steps. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part by Pearson v. Callahan*, 555 U.S. 223 (2009). First, a court must decide whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right. *Id.* at 201. Second, a court must decide whether the right was "clearly established" at the time of the alleged violation. *Id.* A district court may use its discretion in deciding which prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

O'Hare asserts that Ginsberg first entered the Property, which was currently under construction, without a warrant or consent. O'Hare also maintains that Ginsberg entered the curtilage of his Adjacent Property, in order to photograph the backyard of the Property. O'Hare argues, therefore, that Ginsberg violated his right to be free from unreasonable searches and seizures.

The Supreme Court has counseled that the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (citations omitted). Establishing a legitimate expectation of privacy is "a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *United States v. Ford*, 34 F.3d 992, 995 (11th Cir. 1994)

(citing *Katz v. United States*, 389 U.S. 347, 353 (1967) (Harlan, J., concurring)). "[T]he Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or otherwise illegitimate." *New Jersey v. T.L.O.*, 469 U.S. 325, 338 (1985) (citations omitted).

O'Hare first fails to demonstrate that he had a reasonable expectation of privacy in the back of his Property, which was an open construction site at the time of the search. At his deposition, O'Hare explained that he was staying at the Property in "a portion of the house that wasn't under construction." (DE 102-9, Deposition of Christopher O'Hare ("O'Hare Depo."), at 18:11-12). O'Hare maintained that his wife and children were living in an Adjacent Property because there was a "pervasive" mold problem at the Property. (*Id.* at 17:16-22:21). O'Hare further explained that he was at the Adjacent Property "a lot of the time but [he] felt [he] needed to sleep at 2520 [Property] and have [his] clothes there just to make it legal for homesteading." (*Id.* at 17:17-20).

However, the mere fact that O'Hare was sleeping and kept his clothing in a separate portion of the home for purposes of "homesteading" does not mean he had a reasonable expectation of privacy in the portion of his home that was under construction. While O'Hare may have a subjective belief that he had a reasonable expectation of privacy in the portion of the home under construction, it does not appear that this expectation is one that "society is prepared to recognize as reasonable." *Venonia Sch. Dist. 47J v. Acton*, 515 646, 654 (1995) (noting that "[t]he Fourth Amended does not protect all subjective expectations of privacy, but only those that society recognizes as legitimate.") (citations omitted). This is especially true when considering that the record indicates that there were multiple workers at the construction site, and the back of the home exposed the inside of the structure.

6

Further, O'Hare fails to establish that Ginsberg's initial entry into the curtilage of the Property was an unconstitutional search. The Eleventh Circuit has explained that "[i]t is well-established that police officers can enter onto residential property, including portions that would be considered part of the curtilage, in order to carry out legitimate police business." *Coffin v. Brandau*, 642 F.3d 999, 1012 (11th Cir. 2011). Here, Ginsberg entered the curtilage of the Property and the Adjacent Property for purposes of investigating potential Town Code violations and ensuring the home, which Ginsberg believed to be unoccupied, was not being burglarized. O'Hare, however, fails to demonstrate how Ginsberg's investigation, which led him through O'Hare's curtilage was unreasonable.[2] *See Samson v. California*, 547 U.S. 843, 848 (2006) (noting that "under our general Fourth Amendment approach we examine the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment."). For these reasons, O'Hare has failed to establish a Fourth Amendment violation.

Even assuming Ginsberg committed an illegal search under the Fourth Amendment when entering the curtilage and home of O'Hare's Property and the curtilage of the Adjacent Property, O'Hare fails to demonstrate that Ginsberg's conduct violated a clearly established right. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739. That is, "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *City & County of San Francisco, Calif. v.*

---

[2] Although not explicitly argued, Ginsberg's entry into the curtilage and home was also likely justified pursuant to the "exigent circumstances" exception to the warrant requirement. *See Kentucky v. King*, 563 U.S. 452, 452 (2011) (noting that "[i]t is well established that 'exigent circumstances,' including the need to prevent the destruction of evidence, permit police officers to conduct an otherwise permissible search without first obtaining a warrant.").

7

*Sheehan*, 135 S. Ct. 1765, 1776 (2015). A "clearly established" right can be established in two ways: (1) "a controlling and materially similar case declares the official's conduct unconstitutional"; or (2) "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000).

O'Hare argues Ginsberg violated his clearly established Fourth Amendment rights by citing long-held general principles of Fourth Amendment jurisprudence. Namely, O'Hare cites to cases establishing that law enforcement cannot enter one's home without a warrant, consent, or other exception to the warrant requirement, and that the curtilage to one's home often receives equal Fourth Amendment protections. O'Hare does not, however, cite a single case for the proposition that an individual has a reasonable expectation of privacy in an open and staffed construction site. Additionally, O'Hare likewise fails to establish that, under the circumstances perceived by Ginsberg, law enforcement violate the Fourth Amendment by entering the curtilage around one's home for purposes of conducting a legitimate investigation. Because O'Hare fails to demonstrate that the alleged constitutional violations were clearly established at the time of the searches, the Court "cannot conclude that the law was clearly established such that [a] reasonable officer[] facing these circumstances would know that their conduct would violate federal law." *Brandau*, 642 F.3d at 1017. Accordingly, Ginsberg is entitled to qualified immunity as to Count I.

**B. State Law Tort Claims – Count III (trespass) and Count IV (intrusion upon seclusion)**

Florida's limited waiver of sovereign immunity statute provides that:

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any

8

injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*

Fla. Stat. § 768.28(9)(a) (emphasis added). Aside from speculation, O'Hare does not present any specific evidence that Ginsberg "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" when entering his Property and the Adjacent Property on October 28, 2011.[3] Having failed to raise an issue of material fact, Ginsberg is immune from O'Hare's state law claims. Accordingly, Ginsberg is entitled to judgment as a matter of law as to Counts III and IV.

For reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Defendant Ginsberg's Motion for Summary Judgment (DE 100) is **GRANTED**. Ginsberg is entitled to judgment as a matter of law as to Count I because he is entitled to qualified immunity. Ginsberg is also entitled to judgment as a matter of law as to Count III and Count IV.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 28 day of August, 2015.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[3] The only evidence O'Hare identifies is a lone statement by Ginsberg that he could "go anywhere he wanted." (DE 108 at 14).

9